**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**RASHEED MULLINS,**<br><br>**Defendant.** | **Case No: 24-CR-193** |

# DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant Rasheed Mullins, through undersigned counsel, respectfully submits his memorandum in aid of sentencing.

## I. Introduction

Mr. Mullins comes before the Court for sentencing after pleading guilty to one count of Assault with Intent to Kill While Armed and Aiding and Abetting in violation of 22 DC Code §§ 401, 4502(a)(1), 1805. He accepts full responsibility for his conduct. However, he is not defined by the poor choices that led to his appearance before this Court for sentencing. This memorandum is not intended to excuse or minimize his actions, but, rather, to present to the Court a full picture of Mr. Mullins. We respectfully submit that other factors also have substantial importance in determining the appropriate sentence in this matter. In particular, we suggest that focus is warranted on trauma he experienced from a young age, including the horrific murder of his mother at the hands of his own father, and the lasting impact that has had on his life. His traumatic upbringing skewed his development and plagued his emotional well-being from before he can remember.

The first and most critical thing to be said about Mr. Mullins relates to the issue of remorse. Tragically, Mr. Mullins was introduced to violence at a young age. Even more

tragic is that it that the source was his own father. This is not an attempt to excuse or minimize Mr. Mullins' actions in this case. But we submit it is critical to consider his life experiences and circumstances in deciding the appropriate sentence. One could not fathom the trauma associated with being held at gunpoint by your own father. Even more unimaginable is having to watch as your mother is abused for years and living in fear in your own home. Mr. Mullins demonstrates the hallmark symptoms of someone that is exposed to violence from a young age. "Early exposure to violence can profoundly and negatively impact a child's developing brain and emotional well-being. These experiences can shatter a child's sense of safety, leading to chronic fear, anxiety, and post-traumatic stress disorder." Exhibit A, Report of Sid Binks, PhD, ABPP-CN.

Mr. Mullins fully understands and appreciates the wrongfulness of his conduct. He accepts responsibility and has vowed to never again put himself in this situation. His family has vowed to stand by him. Mr. Mullins is grateful for the love and support from his family. He knows not everyone is as fortunate as him. He also knows telling his loved ones he will change is not enough; he needs to show his appreciation and commitment to change through his actions. Based on these and other circumstances described below, we ask the Court to impose a variance and sentence Mr. Mullins to a term of incarceration below the bottom of the applicable guideline and a partially suspended sentence. This sentence would be sufficient, but not greater than necessary, to effectuate the purposes of sentencing prescribed in 18 U.S.C. § 3553(a).

## Argument

***Legal Standard***

The Court is required to consider the Federal Sentencing Guidelines in imposing a sentence, but *United States v. Booker,* 543 U.S. 220 (2005) provides that the Guidelines are "merely one sentencing factor among many, and the calculated guideline range must be considered in conjunction with the other § 3553(a) factors." *United States v. Reinhart*, 442 F.3d 857, 864 (5th Cir. 2006) (citing *Booker*, 543 U.S. at 245–246). The Guidelines are "but one of eight factors the sentencing judge must consider." *United States v. Ovid*, No. 09-CR-216 (JG), 2010 U.S. Dist. LEXIS 105390, at *5 (E.D.N.Y. Oct. 1, 2010).

The factors enumerated in 18 U.S.C. § 3553(a) direct the Court to consider the full history and character of the defendant. Focus on the § 3553 factors "produces sentences that are moored to fairness, and to the goals of sentencing set forth in § 3553(a)(2), but sometimes not so much to the advisory Guidelines range." *Id.* at *4-5. 18 U.S.C. § 3553 requires a "sentence sufficient, but not greater than necessary" when the following factors are considered:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant . . . (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . (5) any pertinent policy statement . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553 (2022). In considering these factors, 18 U.S.C. § 3661 states that "no limitation shall be placed on the information concerning the background, character, and

conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 (2022).

***History and Characteristics of Mr. Mullins***

Rasheed Mullins is a 27 year-old lifelong resident of the greater Washington area. Sadly, he was exposed to violence as soon as he was welcomed into the world. His father was, for lack of a better term, a monster. It may be the case that Mr. Mullins' father was the victim of abuse himself or may have struggled with mental health or addiction. Whatever the reason for his actions, Mr. Mullins was stripped of the opportunity to feel safe and secure, a feeling that everyone deserves, especially an innocent child. Mr. Mullins is unable to recall much of his childhood before his mother's murder. This is likely a coping mechanism given the horrors he witnessed. This early and extensive exposure to violence stunted Mr. Mullins' development and the impacts are lasting to this day.

Mr. Mullins has one paternal brother and four living maternal siblings. One of his maternal siblings, Tiffany Mullins, passed away four (4) years ago from complications associated with sickle cell anemia. Mr. Mullins has no relationship with his paternal brother. His paternal brother shares the same name as his father, Gregory Jackson. By his own admission, and confirmed by his siblings, Mr. Mullins was a "mama's boy." Exhibit A at p. 3. This was likely the result of Mr. Mullins, despite his age, trying to keep his mother safe. The level of attachment between Mr. Mullins and his mother was significant. When he was in second grade, Mr. Mullins missed so many days of school he had to repeat the grade. He stayed home so often because he refused to leave his mother's side. It appears that Mr. Mullins sensed that his mother needed him and wanted to stay home to

try to protect her. His instinct turned out to be correct, as his mother was brutally murdered when he was approximately 8 years old. Exhibit B at 2, Criminal Complaint filed against Gregory Jackson.

Mr. Mullins bore witness to what his mother had to endure before her murder. Given his young age, him and his younger sister were often home with their mother. The other children spent significant periods of time outside of the house, mostly with relatives. They often stayed with their paternal grandmother. Mr. Mullins was not as fortunate. His father often refused to let him leave the house. The home conditions were horrifying. While Mr. Mullins does not recall much of this time, we were able to find records that describe the situation. On May 1, 2003, Monica Mullins, Mr. Mullins' mother, wrote a letter begging for financial assistance as a victim of domestic violence. In the letter, attached hereto as Exhibit C, Monica Mullins pleads for help and describes what she is forced to endure. She proclaims, "It's no fun ~ being scared each and everyday for your life." *Id*. After being stabbed and having the courage to report it to the police, Monica Mullins describes her dismay when the case was no papered by the prosecutors. She felt that she had been forgotten. She was devastated, writing "so now, I say I am more of a victim than before! First by him, second by the government." *Id*. This was one of the many times Monica Mullins sought help. In April 2004, she sought a civil protection order (CPO) against Mr. Mullins' father. Exhibit B. In her petition, Monica Mullins described being attacked by Gregory Jackson. *Id.* She also describes him repeatedly threatening to kill her. *Id*. It is unclear whether the CPO was issued. Even if it was, it did not keep Ms. Mullins safe. Gregory Jackson followed through on his threat six (6) months later. Ms. Mullins was brutally beaten and stabbed to death.

No child is equipped to handle the loss of a parent at such a young age. Mr. Mullins certainly was not capable of processing the violence he saw, nor the trauma associated with losing his mother. After his mother's death, Mr. Mullins was thrust into the foster care system. Fortunately, his maternal grandmother was able to gain custody of him and several of his siblings. But things still felt uncomfortable for Mr. Mullins. The whole family was devastated. His age and attachment to his mother made the pain from the loss unbearable. Despite his innocence and complete lack of blame for the situation, anger was directed towards Mr. Mullins. It was his father that took away Monica Mullins from her children and the rest of her family. Eric Mullins, Mr. Mullins' older brother, notes that "in a family already struggling with trauma, the anger and grief following our mother's death was often misdirected at [Mr. Mullins] because of the role his father played in her murder." Exhibit D, Letter from Eric Mullins. Mr. Mullins was too young to process what was happening.

The Mullins family also struggled financially. The "family was poor, and [they] did not always have the comforts that many others take for granted, such as privacy, new clothes, or basic necessities." Exhibit D. Mr. Mullins' older brother, Eric Mullins, works as a Ward 7 Liaison for the DC Mayor's Office of Community Relations & Services. He now recognizes what his little brother needed but failed to receive. He notes that his brother "needed male mentorship, support, and guidance." *Id.* These needs were never met. Efforts were made to provide Mr. Mullins with a normal childhood, enrolling him in football and other sports. He participated and did his best, but the effects of the trauma increased. Over time, Mr. Mullins' trauma "led him down paths were not conducive to his well-being." *Id.* This sentiment is incorporated in the letters submitted by Mr. Mullins' family. The intent is "not to excuse [Mr. Mullins'] actions but to provide context to his

life and the obstacles he has faced." Exhibit E, Letter from Myeeka Mullins-Anderson.

Despite a childhood filled with trauma and tragedy and also becoming a victim of gun violence himself, Mr. Mullins finished high school and was accepted into college. He hoped for a fresh start and left the violence plagued area where he spent his first 18 years. College was refreshing, he was around people that wanted to better themselves and succeed. This was a stark contrast from his neighborhood in DC where violence was the norm and success was met with contempt. Unfortunately, the financial burden became too much and Mr. Mullins was forced to leave college. He was unable to afford basic necessities and could not stand calling his family, who were struggling themselves, to seek money. Mr. Mullins returned to his old neighborhood. He worked to try to help support himself and his family. A series of deaths, including of his sister, grandmother, and close friends, proved too much for Mr. Mullins to handle. He was drawn away from his family and latched onto bad influences from the neighborhood.

Mr. Mullins is not the brazen unrepentant criminal described by the government. He is genuinely remorseful for his actions. It is not lost on Mr. Mullins that this situation could have been much different if there was a passenger in the car. He is grateful that no one was physically injured. The true character of Mr. Mullins is described in the letters written by his family. He is "sweet, smart, and carries a quiet strength that's honestly inspiring." Exhibit F, Letter from Ta'Tiana Mullins. Other family members describe him as "a good person at his core . . . intelligent, caring, and driven . . . ." Exhibit C. He possesses a deep sense of empathy. Exhibit G, Letter from Keith Anderson. His true character is not defined or limited by his actions on April 2, 2024. He has "a passion for helping others" and has helped those suffering homelessness. *Id.*

***Nature and Circumstances of the Offense***

On April 2, 2024, Mr. Mullins was a participant in a shooting. It was not his plan to be involved in a crime that day. He was not armed and never discharged a weapon. He borrowed a friend's car and met up with his codefendants. He was driving and his codefendants were in the front passenger seat and rear passenger seat. It was not uncommon for Mr. Mullins to be around people who were armed. Gun ownership, albeit illegal, was seen as a requirement by some that spent time in certain neighborhoods. When his codefendants got in the car, Mr. Mullins should have realized something was amiss. He should have asked more questions. If he felt uncomfortable, he should have made an excuse to go home or otherwise separate himself from his codefendants. His decision to continue the journey is something that has occupied his mind ever since his arrest.

Mr. Mullins knew the victim. They grew up in the same neighborhood. There was never any trouble between them. If they saw each other they would exchange a greeting or a quick conversation. It appears that there was a "long-running conflict" between the victim and at least one of his codefendants. Mr. Mullins was not aware of this conflict before April 2, 2024. The existence of the conflict was made clear based on the actions of his codefendants. Mr. Mullins should have thrown them out of the car or jumped out of the car himself. Unfortunately, he did neither and participated in the shooting in his role as the driver.

***Need for The Sentence Imposed***

Mr. Mullins is ashamed and embarrassed of his actions. We presented details about his upbringing and circumstances in order to help put his actions in context, not to excuse them. In connection with the sentencing Mr. Mullins underwent a psychological

evaluation. In his report Dr. Binks diagnoses Mr. Mullins with Post-Traumatic Stress Disorder and several substance use disorders. The PTSD is the result of Mr. Mullins' "history of significant early trauma including witnessing horrific violence, the deaths of both his parents and his grandmother, and experiencing violence himself, presents with posttraumatic emotional distress and behaviors that include some antisocial behavior which are likely maladaptive survival responses to chronic exposure to loss and danger." Exhibit A at 6.

The last 12 months have had a profound effect on Mr. Mullins. While any period of incarceration is difficult, Mr. Mullins' experience has been particularly severe. The conditions at the DC Jail are deplorable. It is not uncommon for raw sewage to be seen in his housing unit. There is significant mold in the housing units. Complaints have been ignored. Given his age, he is often on a unit with individuals that continue to engage in unlawful conduct and violent conduct is common, including stabbing. Mr. Mullins' physical and mental health has also declined. He fell off his bunk and broke his front tooth. Every time he looks in the mirror he will see one of the physical scars resulting from his incarceration. This will serve as a deterrent to keep him from every putting himself back in a situation where he will be incarcerated.

It is clear to Mr. Mullins that the path he was on prior to his arrest in April 2024 was going to end in more tragedy for the Mullins family. His rampant abuse of drugs, spending time with bad influences, and reckless lifestyle meant he was likely to result in prison or death. The last year has allowed him to mature, gain insight into his past, and plan for the future. He intends to build on the college education he started. The people he previously associated with are not part of his future; he wishes them well but will never

again speak with them. Instead, once released from prison, he hopes to relocate to a new area, possibly California, to start anew. His natural intelligence and strong family support give Mr. Mullins unlimited potential. He will not squander the opportunity; he owes it to himself and his family to do better. It will not be easy, but Mr. Mullins is committed to getting the treatment he needs, learning how to deal with his past trauma and addiction issues, and learning how to be a better man and asset to his community.

We respectfully submit that the community is better served by imposing a period of incarceration below the applicable guidelines. Mr. Mullins needs help and support, not punitive incarceration. He needs skills to learn how to support himself and make the right decisions. Mr. Mullins has expressed genuine remorse and a desire to change. Not a day goes by that he does not think about the actions of April 2, 2024 that led to his appearance before this Court. He is "ready for this nightmare to be over . . ." and he "wants to use this time to learn, reflect, and recalibrate for a fresh start." Exhibit H, Letter from Amu'Khari Mullins. Mr. Mullins' family is "prepared to help him reintegrate and stay on the right path" and they are "confident that, if given the opportunity, he will take full advantage of [his second chance] and turn his life around." Exhibit I, Letter from E'Moni Mullins. If given another chance, Mr. Mullins will take advantage of any and all opportunities to gain life skills and make the right decisions. He also asks the Court to allow him to obtain drug treatment through the RDAP program and mental health treatment. Once released from prison, Mr. Mullins asks the Court to allow him to participate in the Reentry Court Program and allow him to participate in the D.C. Resources to Empower and Develop You (READY).

***The Imposition of a Fine Is Unnecessary***

We respectfully request that the Court exercise its discretion to decline to impose a fine upon Mr. Mullins. Imposing a monetary fine would not serve the interest of justice or the public interest. His conviction entails a number of consequences, all of which will negatively impact his life. Upon his release from prison, Mr. Mullins will work to reintegrate back into society and obtain stable employment. The imposition of a fine would only serve to hinder this objective.

## Conclusion

Mr. Mullins understands that the situation he finds himself in is the direct result of his actions. It is our submission that he is not and should not be defined by his actions that led to his appearance before the Court. Mr. Mullins accepted responsibility and pleaded guilty to demonstrate his remorse. He will continue to try to make amends to show that his desire to change is genuine through his actions. We respectfully submit that a variance to a sentence below the applicable guidelines is appropriate and in accordance with the requirements set forth in 18 U.S.C. § 3553(a) and ask the Court to impose such a sentence.

Respectfully submitted,

*/s/ Marc Eisenstein*

Marc Eisenstein
Coburn Greenbaum & Eisenstein PLLC
1710 Rhode Island Ave, NW
Second Floor
Washington, DC 20036
Tel: 202-470-2695
marc@coburngreenbaum.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 15, 2025 a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all counsel of record.

/s/
Marc Eisenstein